UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| WILLIAM N. COVELL, JR., | Case No. 2:20-cv-01058-RFB-NJK |
| Plaintiff, | **ORDER** |
| v. | |
| FREEMAN EXPOSITIONS, LLC, et. al., | |
| Defendants. | |

## I. INTRODUCTION

Before the Court for consideration are Defendant Teamsters, Chauffeurs, Warehousemen and Helpers Local Union No. 631 ("Teamsters" or "Union")'s Motion for Summary Judgment, ECF No. 23, and Defendant Freeman Exposition's Motion for Summary Judgment, ECF No. 29.

## II. PROCEDURAL BACKGROUND

Plaintiff William N. Covell, Jr. brings this action against Defendant Freeman Expositions, LLC for breach of the collective bargaining agreement and against Defendant Teamsters, Chauffeurs, Warehouseman and Helpers Local Union No. 631 for breach of the duty of fair representation. Plaintiff alleges that these breaches resulted in the issuance of an improper letter of no dispatch against the Plaintiff.

The operative complaint was filed in federal court on June 13, 2020. ECF No. 1. The complaint was answered by Defendant Teamsters on July 24, 2020. ECF No. 10. The complaint

was answered by Defendant Freeman on August 4, 2020. ECF No. 14. An order granting the stipulated discovery plan was entered on August 31, 2020. ECF No. 17.

Defendant Teamsters filed a motion for summary judgment on April 12, 2021. ECF No. 23. Plaintiff responded on June 15, 2021. ECF No. 45. Defendants replied on July 2, 2021. ECF No. 50.

Defendant Teamsters filed a motion to seal on April 12, 2021. ECF No. 26. There was no response or opposition to this motion.

Defendant Freeman filed a motion for summary judgment on April 12, 2021. ECF No. 29. Plaintiff responded on June 15, 2021. ECF No. 46. Defendants filed a reply on July 2, 2021. ECF No. 49.

On March 7, 2022, the Court heard oral argument the outstanding motions. ECF No. 52. At the hearing, the Court granted the Motion to Seal, ECF No. 26. A written order on the motions for summary judgment follows.

### III.  FACTUAL BACKGROUND

#### a.  Undisputed Facts

The Court finds the following facts to be undisputed. Defendant Freeman Expositions is in the business of designing, building for, and managing tradeshows. Defendant Teamsters Union represents a bargaining unit of Freeman's non-managerial employees. James Harmer ("Mr. Harmer") is the Union representative responsible for making discretionary decisions and mediating between the Plaintiff and Defendant Freeman in this case. Freeman and the Union are parties to the Collective Bargaining Agreement, which governs the terms and conditions of employment for bargaining unit employees.

A majority of employees whom Freeman employs are "casual journeymen." These are employees whom the Union dispatches to Freeman and other employers on an as-needed basis pursuant to the employment procedures set out in Article 8 of the Collective Bargaining Agreement. Plaintiff was a casual journeyman for Freeman.

i. No Dispatch Letters

Article 14 of the Collective Bargaining Agreement governs so-called "no dispatch letters." A no dispatch letter is an instrument issued by a signatory employer that prevents the Union from dispatching a certain employee pursuant to the dispatching provisions of Article 8 of the Collective Bargaining Agreement. There are two types of no dispatch letters: "employer-only" and "industrywide." An employer-only letter means that the Union cannot dispatch the employee to the particular employer who issued the letter. An industrywide letter means that the Union cannot dispatch the employee to any employer covered by the Collective Bargaining Agreement.

Employer-only no dispatch letters may be issued by an employer for any of the reasons set out in Article 14, Section 2, of the Collective Bargaining Agreement, including "[r]eckless behavior or willfully or negligently misusing, destroying or damaging any property of the Employer, show management, exhibitor or convention facility" as well as any violation of the Drug and Alcohol Policy set out in Article 15 of the Collective Bargaining Agreement.

An industrywide no dispatch letter may be issued only for offenses related to the Drug and Alcohol Policy set out in Article 15. Grounds for issuance of an industrywide no dispatch letter include "engaging in conduct that clearly obstructs the testing process including . . . .failing to remain readily available for a test."

A causal journeyman who receives a no dispatch letter may challenge the letter by filing a written claim with the Union. If such a claim is filed, a representative of the Union will evaluate

its merits. If the Union determines that the claim has merit, the Union may present the claim to a joint committee consisting of a member appointed by a member of the labor force and a member appointed by management. If the joint committee cannot agree on an outcome, the Union may submit the dispute to a neutral arbitrator for a ruling. The arbitrator has discretion to uphold the letter, to remove it as without merit, or to reach a lesser penalty.

          ii.   Plaintiff's 2019 Settlement

On October 3, 2019, Plaintiff drove one of Freeman's forklifts to a nearby gas station to get something to eat. This violated company rules forbidding reckless conduct and misuse of company property. In response to this incident, Freeman issued Plaintiff an employer-only no dispatch letter of permanent duration on October 8, 2019. Freeman cited as justification two provisions of Article 14, section A, of the Collective Bargaining Agreement: subsection 2(b) ("[d]ishonesty, including but not limited to stealing/theft, falsification or the unauthorized use, removal or possession of property not belonging to the employee") and subsection 2(e) ("[r]eckless behavior or willfully or negligently misusing, destroying or damaging any property of the Employer, show management, exhibitor or convention facility").

The Union advocated for Plaintiff and got the permanent employer-only no dispatch letter downgraded to a "last chance" agreement in place of the letter. As part of the settlement, the parties agreed that Freeman would withdraw the no dispatch letter, but that if Plaintiff committed any "like" infraction in the future, Freeman would issue a permanent no dispatch letter which neither the Union nor Plaintiff could challenge under the Collective Bargaining Agreement. Plaintiff was reinstated as a result. Plaintiff was aware of the settlement and the fact that another similar incident of reckless conduct would cost him his job.

/ / /

- 4 -

### iii. Subject Incident

On December 14, 2019, Plaintiff was assigned to door four at the Las Vegas Convention Center for a convention tear-out. Another worker, Mike Davis ("Davis"), asked Plaintiff to assist with loading a 12,000-pound machine into a truck. Davis loaded the machine into the truck and pushed it forward into the bed of the truck as far as he could.

Davis was using a forklift with a 15,000 pound lifting capacity. Davis performed this operation in the following manner: the machine was sitting on a pallet at floor level. The pallet is used as a base because it has slots into which tines of the forklift can be inserted. Inserting the tines of his forklift into the pallet, Davis lifted the machine vertically from the floor and drove it into the trailer. He elevated the machine to above the height of the trailer bed and extended the tines horizontally so as to position the machine and pallet as far forward into the trailer as the tines would extend. He placed the machine and pallet down on the floor of the trailer and backed the forklift from the trailer.

However, the driver of the tractor-trailer wanted the machine positioned further back into the trailer than Davis had been able to position it with the tines of his forklift.

Plaintiff was operating a 5,000 pound forklift. Plaintiff attempted to help by pushing the machine further into the trailer with the aid of a platform. The platform was a rectangular steel object generally 10 feet long and 8 feet wide that is designed for transporting loose furniture; it has a guardrail around its perimeter to keep items from falling off. In this instance, Plaintiff used it as a pushing device: a use for which it is not designed. Plaintiff inserted the tines of his forklift into the slots on the bottom of the platform, lifted the platform vertically to the height of the trailer bed, and positioned the edge of the platform against the machine. The floor of the platform consists of a sheet of one-quarter inch steel that sits atop the steel base of the platform and that extends

beyond that base by an inch, forming a "lip." Mr. Covell positioned a piece of wood (a 2-by-4) underneath that lip so that it would serve as a pushing device against the machine and would at the same time supposedly protect the machine from damage. The idea was that the platform and the wood together would act as a pushing device and that this would allow the forklift to push the machine several feet into the trailer bed beyond where Davis had been able to position it.

When Plaintiff first attempted to push the machine, it would not budge. Plaintiff then backed up his forklift, got a head start and more speed, and drove into the machine forcefully again. The force exerted at the point of contact between the platform and machine was so large that the piece of wood was dislodged. The wheels on Plaintiff's forklift spun. Plaintiff did not inspect the machine for damage after the wood was dislodged, or at any point thereafter. Shortly after this event occurred, Plaintiff left the scene to return the platform and forklift, and then left work early without notifying anyone in management of the incident or obtaining management's permission to leave early.

After Plaintiff left, the driver of the truck that the machine had been placed on reported that Plaintiff damaged the machine when he pushed the machine too hard and fast. Freeman suspended Plaintiff pending investigation after learning that Plaintiff had left work without reporting the incident to anyone. Defendant Freeman investigated and collected statements, including a statement from Davis, who confirmed that Plaintiff damaged the machine. Defendant Freeman found Davis' statement to be credible and consistent with what the information reported by the truck driver, a non-Freeman employee and neutral witness.

     iv. <u>Subsequent Communications between Freeman and the Union on Behalf of Plaintiff</u>

On December 26, 2019, Harmer spoke with Cheryl King, Freeman's chief of Human Resources, about Plaintiff's situation with regard to the incident. King stated that management could not meet until the new year, and that if Freeman had to act immediately it would be to issue the no dispatch letter. Harmer agreed that they could extend the 10-business day timeline for the Employer to issue a no dispatch letter set out in Article 14, Section A(2) of the Collective Bargaining Agreement, and instead schedule a meeting in January 2020 after the holiday season.

On January 3, 2020, Harmer secured a meeting with Freeman to discuss Plaintiff's case on January 9, 2020 at 10 a.m. Harmer informed Plaintiff of the date, time, and place of the meeting, and Plaintiff acknowledged it. However, at the time of the meeting, Plaintiff did not attend.

v.   <u>No Dispatch Letter Issued to Plaintiff</u>

On January 15, 2020, Freeman issued Plaintiff a permanent no dispatch letter. Freeman cited three provisions of Article 14, Section A as grounds for the letter: subsection 2 (c) ("[r]efusal of a job assignment, except for safety reasons, and/or including, but not limited to, quitting in response to an assignment, leaving jobsite and/or assignment without authorization, except in the case of a verifiable emergency"); subsection 2(f) ("[r]eckless behavior or willfully or negligently misusing, destroying or damaging any property of the Employer, show management, exhibitor or convention facility"); and violation of the Drug & Alcohol Policy as referred to in Article 14. The no dispatch letter was employer-only, meaning that the Union could not dispatch Plaintiff to Freeman but could do so to any other employer.

vi.   <u>Union Response to the No Dispatch Letter</u>

Freeman sent a copy of the no dispatch letter to Harmer, and Harmer forwarded it to Plaintiff. When Plaintiff asked what he could do, Harmer advised him of his right to challenge the letter under the Collective Bargaining Agreement.

On January 17, 2020, Plaintiff filed a challenge with the Union. As the Union representative who had been handling his dispute, it was Harmer's job to make the determination under Article 14 whether the challenge had sufficient merit to proceed to a joint committee and arbitration.

In an attempt to get Defendant Freeman to rescind the letter, Harmer scheduled a second meeting between the Plaintiff and Freeman on February 6, 2020. At the end of the meeting, Freeman expressed that because Plaintiff did not take ownership for his conduct, they were not going to recommend that Freeman withdraw the letter.

Subsequently, the Union reached the decision that Plaintiff's challenge to the no dispatch letter would not be successful and no further action should be taken.

### b. Disputed Facts

Plaintiff contests the representation of both Defendants that he acted in a way that could be considered reckless. He argues that if he had known of the possibility of damage, he would have reported it. Finally, he contests Defendant Freeman's characterization of his conduct as "ramming."

## IV. LEGAL STANDARD

Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); accord Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The substantive law governing a matter determines which facts are material to a case. Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986).

When considering the propriety of summary judgment, the court views all facts and draws all inferences in the light most favorable to the nonmoving party. Gonzalez v. City of Anaheim, 747 F.3d 789, 793 (9th Cir. 2014). If the movant has carried its burden, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts …. Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." Scott v. Harris, 550 U.S. 372, 380 (2007) (alteration in original) (internal quotation marks omitted).

It is improper for the Court to resolve genuine factual disputes or make credibility determinations at the summary judgment stage. Zetwick v. Cty. of Yolo, 850 F.3d 436, 441 (9th Cir. 2017) (citations omitted).

### V.    DISCUSSION

Defendant Teamsters argues that summary judgment is appropriate because Plaintiff cannot show that the Union handled Plaintiff's challenge to the letter of no dispatch arbitrarily. They argue that, after fairly investigating the circumstances around the incident, Union Representative Harmer concluded that the greater likelihood was that the arbitrator would side with Freeman and therefore that Plaintiff's challenge to the no dispatch letter would not be successful. They further argue that the undisputed facts show that there was no bad faith or discrimination in the handling of the challenge letter. Defendant Freeman argues that they did not violate the collective bargaining agreement when it issued the letter of no dispatch because the Plaintiff engaged in reckless conduct, was in violation of the Alcohol and Drug Policy, and left the jobsite early after the incident.

Plaintiff argues that his actions were not reckless, that he did not leave the workplace to avoid a drug test, and that the incident in October 2019 was not a "like" incident to the incident that occurred here, and therefore not a basis for this subsequent punishment.

### a. The Law of "Hybrid Actions"

A suit by an employee against the union and the employer for breach of the duty of fair representation implied under Section 8(b)(1) of the National Labor Relations Act, 29 U.S.C. 158(b)(1) and breach of the Collective-Bargaining Agreement under Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185 is what is known as a "hybrid action." Plaintiff's claim here is one such "hybrid action." In order to prevail against either the company or the Union, Plaintiffs must not only show that the letter of no dispatch was contrary to the collective bargaining agreement but must also carry the burden of demonstrating breach of duty by the Union. DelCostello v. Int'l Bhd. of Teamsters, 462 U.S. 151, 165 (1983). This showing involves demonstrating that both Defendants committed more than "mere errors in judgment." Hines v. Anchor Motor Freight, Inc., 424 U.S. 554, 570-571 (1976).

Hybrid actions were established by the Supreme Court in Vaca v. Sipes, 386 U.S. 171 (1967). They are supported by the long-standing federal labor policy favoring the negotiation of grievance procedures which expedite the resolution of disputes more quickly than litigation. This higher-than-normal burden encourages the efficient resolutions of disputes outside of the judicial process *except* in situations where both the employer *and* the Union have exhibited some wrongful conduct. See Id. at 185 ("We think that another situation when the employee may seek judicial enforcement of his contractual rights arises if. . . .the union has sole power under the contract to invoke the higher stages of the grievance procedure, and if, as is alleged here, the employee-plaintiff has been prevented from exhausting his contractual remedies by the union's wrongful

refusal to process the grievance.") Therefore, if Plaintiff fails to establish that either the Union has breached its duty of fair representation or that Defendant Freeman has breached its contractual obligations, that failure is dispositive of both of his claims.

### b. Breach of the Duty of Fair Representation

The Court begins with analysis of the breach of the duty of fair representation. A breach of the statutory duty of fair representation occurs only when a Union's conduct toward a member of the collective bargaining unit is arbitrary, discriminatory, or in bad faith. Vaca v. Sipes, 386 U.S. 171, 190 (1967). The Supreme Court has long recognized that unions must retain wide discretion to act in what they perceive to be their members' best interests. See, e.g., Ford Motor Co. v. Huffman, 345 U.S. 330, 337-38, 97 L. Ed. 1048, 73 S. Ct. 681 (1953). To that end, the Ninth Circuit has "stressed the importance of preserving union discretion by narrowly construing the unfair representation doctrine." Johnson v. United States Postal Service, 756 F.2d 1461 (9th Cir. 1985, as amended May 3, 1985) (citation omitted). The Ninth Circuit has emphasized that, because a union balances many collective and individual interests in deciding whether and to what extent it will pursue a particular grievance, courts should "accord substantial deference" to a union's decisions regarding such matters. Peterson v. Kennedy, 771 F.2d 1244, 1253 (9th Cir. 1985). Accordingly, on the basis of the undisputed facts, the Court must determine whether Harmer's actions were (1) arbitrary, (2) discriminatory, or (3) in bad faith.

In making this consideration, a Court need not find that a union's representation of its members was "error free." Castelli v. Douglas Aircraft Co., 752 F.2d 1480, 1482 (9th Cir. 1985). The Ninth Circuit has repeatedly concluded that mere negligent conduct on the part of a union does not constitute a breach of the union's duty of fair representation. See, e.g., Id.; Clayton v. Republic Airlines, Inc., 716 F.2d 729, 732 (9th Cir. 1983); Singer v. Flying Tiger Line, Inc., 652

F.2d 1349, 1354 (9th Cir. 1981); Stephens v. Postmaster General, 623 F.2d 594, 596 (9th Cir. 1980).

### i. Arbitrariness

In Peterson, the Ninth Circuit found that "[i]n all cases in which we found a breach of the duty of fair representation based on a union's arbitrary conduct, it is clear that the union failed to perform a procedural or ministerial act, that the act in question did not require the exercise of judgment and that there was no rational and proper basis for the union's conduct." 771 F.2d at 1254. The Court went on to say that "we have never held that a union has acted in an arbitrary manner where the challenged conduct involved the union's judgment as to how best to handle a grievance. To the contrary, we have held consistently that unions are not liable for good faith, non-discriminatory errors of judgment made in the processing of grievances." Id. See also Castelli v. Douglas Aircraft Co., 752 F.2d 1480, 1482 (9th Cir. 1985), Dutrisac v. Caterpiller Tractor Co., 749 F.2d 1270, 1274 (9th Cir. 1983), Singer, 652 F.2d at 1355; Ness v. Safeway Stores, Inc., 598 F.2d 558, 560 (9th Cir. 1979); see also Hines v. Anchor Motor Freight, Inc., 424 U.S. 554, 571 (1976).

The Court finds that the Union did not act in an arbitrary manner towards Plaintiff. Plaintiff alleges that the Union failed to adhere to certain deadlines set out in the Collective Bargaining Agreement and that this constitutes an arbitrary failure to perform ministerial duties. For example, Plaintiff argues that the Union erred in interpreting Article 14, Section A, subsection 2 of the Collective Bargaining Agreement pertaining to the deadline by which Freeman must issue a letter of no dispatch after it suspends an employee. Article 14, Section A, subsection 2 states that

> In the event the Employer suspends a casual employee pending an investigation of an alleged violation covered by this Section, the Employer must complete the investigation within ten (10) business days. At the end of that period, the Employer must either issue a warning notice or Letter of No Dispatch or the Employer must reimburse the employee for work missed during the period of the investigation, unless mutually agreed otherwise.

ECF No. 25 at 58. Plaintiff argues that the phrase "unless mutually agreed otherwise" applies only to the obligation that the Employer "reimburse the employee for work missed during the period of investigation" and not to the obligation that the Employer must either issue a letter of no dispatch or not "at the end of that [10 day business] period." Because Freeman did not issue the letter of dispatch until January 15, 2020, Plaintiff argues that the violation of the Collective Bargaining Agreement is clear and that the Union acted arbitrarily in not pursuing his challenge to arbitration.

However, the Court finds that the Union acted in what it believed were Plaintiff's interest in preventing the issuance of a no dispatch letter in the context of the deadlines in this case. On the basis the undisputed facts, it is clear that Mr. Harmer extended the 10-business day deadline in order to attempt to reach a more beneficial outcome for Plaintiff and to avoid a more protracted dispute. The undisputed facts indicated that on December 26, 2019, Cheryl King, Freeman's chief of Human Resources, communicated to Mr. Harmer that management could not meet until the new year, and that if Defendant Freeman had to act immediately it would be to issue the no dispatch letter. Mr. Harmer had previously had success negotiating with Defendant Freeman on Plaintiff's behalf, evidenced by his experience in October 2019. Accordingly, Mr. Harmer agreed to an extension of the 10-business day timeline under Article 14 in order to accommodate a meeting before the letter was issued. The Ninth Circuit has made it clear that Courts should "not attempt to second-guess a union's judgment when a good faith, non-discriminatory judgment has in fact been made." Peterson, 771 F.2d at 1254. Here, the Union's contract interpretation is sound and not arbitrary, as was Mr. Harmer's decision to extend the timeline. Accordingly, the Union's action was not an arbitrary failure to perform a ministerial duty.

The same is true for the Plaintiff's other example of an alleged arbitrary failure to perform a ministerial duty. Plaintiff claims that the Union also violated Article 14, Section A, subsection 2 of the Collective Bargaining Agreement by failing to act within "twenty days" of Plaintiff's challenge to the no dispatch agreement. ECF No. 25 at 59. Plaintiff claims that the Union was 6-7 days late in issuing a letter to the Plaintiff responding that they would not pursue the claim. The Union argues that it is their policy to interpret "days" to mean business days in this subsection, in order to give the employee maximal time to challenge the no dispatch letter. The Ninth Circuit has also held that "a union's conduct may not be deemed arbitrary simply because of an error. . . . in interpreting particular provisions of a collective bargaining agreement." Peterson, 771 F.2d at 1254. For this reason and the reasons stated above, the Court finds that this interpretation does not constitute an arbitrary failure to perform a ministerial duty.

Further, the Union's discretionary judgment about how to best handle Plaintiff's grievance does not constitute arbitrary conduct. The undisputed facts are clear that Mr. Harmer assisted Plaintiff in every step of the process. He even successfully rescheduled a key meeting that Plaintiff had missed. The record shows that Mr. Harmer was diligent in corresponding with witnesses, the employer, and with Plaintiff. He bargained on behalf of Plaintiff in a fair and neutral manner. The Collective Bargaining Agreement grants the Union representative discretion to determine "the merit of the claim" in a challenge to a no dispatch letter. ECF No. 25 at 59. The Collective Bargaining Agreement undisputedly grants that representative the ability to determine that the claim does not have merit. Accordingly, the Court finds that there is no breach of the fair duty of representation due to arbitrary behavior by the Union.

    ii.   Bad Faith and Discrimination

Next, the Court must analyze whether the Union behaved in a discriminatory manner or in bad faith. Whereas the arbitrariness analysis looks to the objective adequacy of the Union's conduct, "the discrimination and bad faith analyses look to the subjective motivation of the Union officials." Simo v. Union of Needletrades, Indus. & Textile Emps., Sw. Dist. Council, 322 F.3d 602, 618 (9th Cir. 2003) (quoting Crider v. Spectrulite Consortium, Inc., 130 F.3d 1238, 1243 (7th Cir.1997) (citation omitted)). The burden is upon the Plaintiff to adduce affirmative evidence of invidious motivation, and the Union has no burden to show that it acted in good faith. Id.

There is nothing in the record that supports the contention that the Union's actions were in bad faith or discriminatory. Plaintiff does not make a clear discrimination claim, but rather, contends that Harmer acted in bad faith during the exchange of text messages between himself and Plaintiff on January 3, 2020. On that day, Harmer notified Plaintiff of the January 9, 2020 meeting with Defendant Freeman. At the end of a stream of texts sent about that upcoming meeting, Plaintiff asked Harmer: "Do you think I was done wrong." Ten minutes later Plaintiff wrote again: "I hope you say yes and will fight for the same hours that I would've worked at the dock because if there is a time that would be one. Right." About thirty minutes later, Harmer responded "Yes." See ECF No. 25 at 105. Plaintiff alleges that this was a deceptive statement.

The Court finds, however, contrary to Plaintiff's assertions, that Mr. Hamer did in fact advocate for Plaintiff by assisting him with every step of this process and by attempting to prevent the issuance of a no dispatch letter. Therefore, there is no breach of the duty of fair representation on the basis of a discriminatory or bad faith claim. Because the Union's conduct was not arbitrary, in bad faith, or discriminatory, the Union did not breach their duty of fair representation to the Plaintiff.

The Court thus grants summary judgment for the Union in this case.

### c. Breach of the Collective Bargaining Agreement

Plaintiff argues that Defendant Freeman breached the collective bargaining agreement in issuing the no dispatch letter because his conduct was not "reckless." Because of the hybrid nature of this action and the fact that the breach of the duty of fair representation claim does not succeed, the Court need not address this claim in order to reach a decision on summary judgment. The Court therefore also grants summary judgment in favor of Freeman in this case.

## VI. CONCLUSION

**IT IS THEREFORE ORDERED** that Defendant Teamsters' Motion for Summary Judgment (ECF No. 23) is GRANTED consistent with this order.

**IT IS FURTHER ORDERED** that Defendant Freeman's Motion for Summary Judgment (ECF No. 29) is GRANTED consistent with this order.

The Clerk of the Court is directed to enter judgement in favor of Defendants and close this case.

**DATE**: March 31, 2022.

_____
**RICHARD F. BOULWARE, II**
**UNITED STATES DISTRICT JUDGE**